Wanamaker, J.
This is an original action in this court brought by the relator for a writ of mandamus against the secretary of state commanding the latter to issue a commission to relator as a commissioner-elect for Greene county, pursuant to the November election, 1922.
The claim of the defendant against the writ is based upon the alleged unconstitutionality of Section 2395, General Code, which reads:
“The board of county commissioners shall consist of three persons who shall be elected as follows: In the year 1920 three county commissioners shall be elected in each county. The two persons who receive the greatest number of votes shall hold their office from the third Monday of September, 1921, until the first Monday of January, 1925. The third *3 one eleeted in 1920 shall hold office from the third Monday of September, 1921, to the first Monday of January, 1923. In November, 1922,'and quadrennially thereafter, one commissioner shall be elected to take office on the first Monday of January following. In November, 1924, and quadrennially thereafter two commissioners shall be elected to take office on the first Monday of January following. Thereafter such officers shall hold office for the term of four years and until their successors are elected and qualified.”
This section was passed in 1919, and pursuant thereto, in the year 1920, in the several counties of the state, three county commissioners were elected in each county. The highest two in number of votes were to hold their office from “the third Monday of September, 1921, until the first Monday of January, 1925,” substantially three years and nine months. The third one elected in 1920 was to “hold, office from the third Monday of September, 1921, to the first Monday of January, 1923,” substantially one year and nine months.
It is urged that this is in violation of the plain provisions of the constitution, especially Sections 1 and 2, Article XVII of the Constitution:
“Section 1. Elections for state and county officers shall be held on the first Tuesday after the first Monday in November in the even numbered years; and all elections for all other elective officers shall be held on the first Tuesday after the first Monday in November in the odd numbered years.”
Section 2, so far as pertinent, reads:
“The term of office of all elective county * * # officers shall be such even number of years not ex *4 ceeding four (4) years as may be so prescribed. And tbe general assembly shall have power to so extend existing terms of office as to affect [effect] the purpose of section 1 of this article.”
It is conceded of course that the election in question was held in an “even numbered” year, but it is claimed that Section 2 was violated as regards the term of office “not exceeding four (4) years as may be so prescribed.”
It is conceded that the term of county commissioners prior to the act of 1919 was two years. It is also conceded that the legislature in its discretion might change such two-year term to a four-year term, agreeable to the constitution.
In making such change, an interim or interval arises between the last two-year term and the first four-year term, in regard to which the general assembly sought to provide by popular election instead of official appointment.
Does such provision, in anticipation of a permanent regular order under the four-year term, constitutionally invalidate the statute? The provisions of the constitution of necessity are in general terms, and the grants of power therein made are not to be rigidly, literally and strictly construed, so as to defeat the purposes therein intended and the powers therein granted. When Section 2, Article XVII, was originally adopted, it contained the language: “And the general assembly shall have power to so extend existing terms of office as to affect [effect] the purpose of section 1 of this article.”
It is urged on behalf of the relator that the expression “existing terms” is broad and comprehen *5 sive enough to include the case at bar. With this contention we cannot agree. We hold that it applies only to the terms then existing, and not in futuro.
It will be observed, however, that the legislature, under the constitutional provision of Section 2, was given full discretion to make the even number of years constituting the term of the county commissioner either four years maximum, or two years minimum, for the regular or permanent order, until legislative policy enacted otherwise.
The legislative right under this grant of power to make the change from two years to four years, or from four years to two years, must be held to include appropriate power to provide for the administration of the county office of commissioner during the interval or interim existing in that office by reason of any such change.
This power, though not expressed, must be clearly implied, or else one of two things must occur — either the legislature be powerless to make the legislative change, or the office be vacant during the interval. If vacant, the same could be filled by proper appointment, under provisions of the law; but the mere fact that the legislature saw fit to provide that the interval or interim should be filled by the people themselves, through popular election, cannot be urged, in a democracy where the people elect their public officers, as a valid reason against constitutionality of the law.
Moreover, these constitutional provisions granting legislative power, especially as to discretion touching public officers, must be elastic enough to permit any legislative enactment, which is manifestly more *6 or less of an experiment, to be modified as official experience suggests and requires, and in effecting such modification or amendment the transition period must be provided for, so far as practicable, in the same manner as the permanent period is provided for.
That has been done for many years. Where a new elective office is created, temporary appointments have been made in order that public service might not be unnecessarily delayed, until the next regular election, at which time the people proceeded under the constitution and the statutes to regularly elect. That has been particularly true as to judges. The first chief justice of the supreme court of Ohio, provided for under the Constitution of 1912, was appointed by the governor, and nobody thought of contesting by quo warranto, or any other proceeding, the right and title of the incumbent to serve as such until the next regular election provided for could be held. And yet, under the constitution, the chief justice is an elective state officer.
In short, these constitutional provisions are proposed and adopted to control and limit the regular, orderly, and permanent course of public office and affairs, and are not designed or adapted to meet the transition periods of intervals that naturally result from needed changes in the public service through laws regularly and duly enacted. We hold, therefore, that the statute .as a whole is constitutional.
However, if the contentions heretofore made and discussed were vital and effective as against the statute, upon constitutional grounds, they could affect nothing more than the short terms, which have *7 now already expired, the regular order having gone into effect January 1,1923. A year and nine months having expired on the first of January, 1923, the question is now a moot one, and is therefore controlled by the doctrine announced in State, ex rel. Attorney General, v. Brown, 60 Ohio St., 499, in which the court says, at page 511:
“Had the question been properly made before these illegal vacancies and appointments all expired, there would have been some substance to the claim, something to act upon, somebody to oust from office. That has now all gone by, and the illegality growing out of the vacancies caused by this change of the statute, no longer exists, and the invalidity of the statutes should not be construed to extend beyond the illegality which caused it. The illegal vacancies caused the invalidity of the statute while these vacancies existed, but the illegal vacancies having expired, they no longer operate to invalidate the statute.
“Aside from creating such illegal vacancies, there is nothing in the constitution to prevent the general assembly from fixing the date at which the term of office of a county commissioner shall begin, and such illegal vacancies having expired and become inoperative before any proceedings were commenced by the state or any citizen thereof to declare the statute invalid by reason of such illegal vacancies, sound policy requires that the statute shall now stand and operate the same as if no such illegal vacancies had resulted therefrom. Advantage must be taken of such a statute while the illegality is alive and doing harm, and not after it is dead and without operation to harm any one.”
*8 This is sound doctrine, and should be applied here were there sound constitutional (objection I to the statute by reason of the transition from the two-year to the four-year term.
It is obvious that the sovereign people of Ohio, who adopted their sovereign constitution, understood and believed that the Act of 1919, providing for the election of the three commissioners in 1920, was a valid constitutional act. All primary nominations of candidates for commissioners in both parties, and the elections of county commissioners' iu the following November of 1920 and 1922, were had and held under this general understanding and belief, and before denying to the relator his obvious right to his official commission to the office to which he has been duly and regularly nominated and elected by the people of his county, the court should hesitate long, and act only when justified upon good cause and clear constitutional grounds. The writ is allowed.

Writ allowed.

Marshall, C. J., Robinson, Jones, Matthias, Day and Allen, JJ., concur.